# CASES

### IN THE

# SUPREME JUDICIAL COURT

#### IN THE

#### COUNTY OF PENOBSCOT, JUNE TERM, 1838.

---

## M. P. SAWYER & al. vs. WILLIAM HAMMATT & al.

Where a right to cut and take a certain quantity of standing timber from a tract of land is reserved, or given, in a written contract, and no *time when* is fixed by the parties, the law prescribes a *reasonable time* within which it must be done.

When written instruments have reference to a former contract, and contain recitals of its subject matter, and it appears, that there is a variance between such instruments, and between them and the contract; the recitals are to be explained and corrected by the contract to which reference is made.

If a contract in writing expressly refer to a written instrument, the law will imply, that a party to the contract has notice of the contents of such instrument.

THIS action was before the whole Court once before, and the report is found in 3 *Fairf.* 391. It was again tried before SHEPLEY J., at the *October* term, 1836. The facts in the case sufficiently appear in the former report and in the opinion of the Court in this.

The case was argued by

*F. Allen,* for the plaintiffs, who cited *Pease* v. *Gibson,* 6 *Greenl.* 81, and *Wilson* v. *Reed,* 3 *Johns.* 175.

And by *Rogers,* for the defendant, who cited *Hunt* v. *Livermore,* 5 *Pick.* 395, and *Davlin* v. *Hill,* 2 *Fairf.* 434.

The opinion of the Court was delivered at the *June* term, 1838, by

SHEPLEY J. — This case having been again submitted to a jury the facts are presented in some respects differently. Another document, signed by the defendant, has been produced ; and one formerly rejected as illegal, is now by the act of the other party rendered legal testimony. The defendant, by his bond to *Treat* and others, of the 26th of *December*, 1832, reserved to himself the right to cut and take from the township three millions feet of board logs. There being no time limited in the contract, the law prescribes a reasonable time within which it should be done. By a deed dated the 17th, but not delivered till after the 24th of *January*, 1833, the defendant conveyed the land to *Treat* and others without any reservation, and the land would pass to them and to their grantees free from any claim on his part existing before the deed, unless such claim was recognized by some other valid contract.

The contract of the 24th of *January*, 1833, accepted by the plaintiff, *Sawyer*, with *Usher*, who afterward assigned all his interest in it to *Sawyer*, refers to " the three millions feet of timber to be obtained in the present *winter* by *William Hammatt* according to the terms of his contract with the purchasers from him." It is very difficult now, since no other contract is found to have existed relating to this timber, between him and those who purchased of him, to perceive that this reference could have been to any other contract, than the bond from the defendant to *Treat* and others. At the time, *Sawyer* might have been ignorant, whether the contract referred to should prove to be this bond or some other contract having special reference to the timber. And this may have had its influence upon the jury in finding, as they have done, that the existence of that contract was not known to either of the plaintiffs. But although neither of them had ever seen, or been informed of the contents of such a paper, the law will infer, that *Sawyer* must have understood, that the defendant was to obtain three millions feet of timber, and that such right existed by virtue of some " contract with the purchasers from him," (*Hammatt,*) because it is so stated in a paper signed by *Sawyer*. Whatever might be the

form of the contract, and whether the reference be to the bond, or to some other contract embracing the same matter, the effect would be the same. The quantity of timber would be reserved to the defendant; and any error in the time and mode of taking it would be liable to be corrected by the paper to which reference was made, whatever that paper should prove to be.

The principal difficulty arises from the papers of a later date. In the one bearing date on the 22d of *February* following, signed by the defendant and prepared and presented to the plaintiffs to inform them of his rights, he states the mortgage taken to himself as security, and that neither he, nor any other person has any other claim " except the reserved right to take three millions board logs the present *season.*" It was undoubtedly competent for the defendant to alter and vary his own rights by shortening the time allowed him to take the timber, and if the plaintiffs so understood that paper, and made their contract accordingly, it is but just, that the defendant should, and he must be bound by it. Looking at the attending circumstances, and the paper signed by *Sawyer* and *Little*, bearing date the 25th of *February*, it is not easy to come to the conclusion, that it was so understood by them. It was left with *Sawyer* and *Little* by *Mitchell*, when he completed with them the contract made with *Sawyer* and *Usher.* It was not presented for the purpose of correcting any error, or of exhibiting any change of the rights of the defendant as before understood, nor for the purpose of forming a new contract; but it was used as explanatory of those rights, which had already been considered and regarded in making the contract with *Mitchell.* Its operation upon their minds and their construction of it may be inferred when taken in connexion with the paper signed by them on the day when it was presented to them. This last paper given by them to *Mitchell*, to be the evidence of the defendant's right to the timber, recites the existence of a " permit," a term not used before, authorizing it to be taken " in the present year," and says, we " hereby agree that said *Hammatt* may there get said three millions feet of timber without hindrance or claim from us." Had they regarded an early time as very important, and of the essence of the contract, it is not probable, while they had the defendant's statement of it, as the present season, before them, that they would have yielded to him the whole

year. It is more probable from a consideration of all the facts and papers, that it was well understood, that it was to be taken off as soon as it conveniently could be ; and that the exact time when it was to be wholly removed received so little attention, that the various statements of the time were, either not noticed, or not regarded as of importance. In no other way is it to be accounted for, that careful and intelligent men should have so differently and carelessly stated the time, unless it happened from their understanding, that they were not making a contract to secure definitely the defendant's rights, but only reciting or referring to another contract, by which those rights were secured, and by which any unimportant error might be corrected. And it is important to notice, that the time limited for taking the timber off, in the paper signed by *Sawyer* and *Little*, is only stated by way of recital of another agreement, and that it is not a limitation incorporated as originating with them. The three last papers do not purport to be the contract by which the defendant's rights were secured, but to state, or recite its character so as to make known its substance. And as they refer to a contract by which the defendant's right existed, and do not originate and define the right, the correct course appears to be to refer them to the recited document, to correct any error, or explain any doubt. This principle was adopted where one contract was recited in another, as charging an estate with one debt, when the body of the recited contract was found to charge the estate with two debts. There being no proof of mistake or fraud the recital was corrected by the original. *Price v. Bigham's Ex'r,* 7 *Har. & Johns.* 296.

If it be said, that the defendant is bound by his limitation of the time to the present season, it may with equal propriety be said, that the plaintiffs are bound by their recital, that it extends to the present year. Does not the difficulty of fixing upon either as the one more properly binding, suggest the propriety of referring them for explanation to the paper which occasioned their existence ? So the intrinsic difficulty of comprehending with certainty, what the true intention of the parties, when so variously expressed, really was, points to the same course.

Nor is it perceived, that the application of this principle can be regarded as incorrect because the jury have found, that the plaintiffs had no knowledge of the existence of the bond from the de-

fendant to *Treat* and others. The answer to any difficulty arising from that source is, that *Sawyer* and *Little* have referred to a permit, and the former has accepted an instrument referring to a contract, between the former owners and the defendant, as exhibiting his rights; and if they had no such knowledge as would authorize a jury to find the existence of the bond as a fact known to them, yet a knowledge of some valid license is necessarily inferred; and the law will attach that reference to the only license which had existed, and to which alone it could apply. The law will not suppose one to be ignorant of that to which his contract refers, but will imply notice of it, whether he have actual knowledge of it or not, when referred to in a contract, to which he is a party.

It would not be safe to allow a party to set up his want of knowledge in such a case; he might as well plead a want of knowledge of the effect of any other stipulation in the contract. If there be fault, it is that of the party to sign an instrument containing a recital of another, of the actual existence of which he has no knowledge. And if injury arise, it would not be just to cast it upon the party who receives the instrument with such a recital, and who has a just right to conclude, that it was understandingly made.

The conclusion is, that the documents were all properly admitted in evidence; that the different statements in relation to the time are all to be construed and reformed by the original contract conferring the right; that the timber was all taken off within the reasonable time which the law allowed; and that according to the agreement of the parties, judgment be entered for the defendant.